Leonard A. Gail
lgail@masseygail.com
Suyash Agrawal
sagrawal@masseygail.com
Peter M. Stasiewicz
pstasiewicz@masseygail.com
Constance Grieves (*PHV pending*)
cgrieves@masseygail.com
William K. French
wfrench@masseygail.com
MASSEY & GAIL LLP
50 East Washington Street, Suite 400
Chicago, IL  60602
Tel: (312) 283-1590

Matthew M. Collette
mcollette@masseygail.com
Kylie C. Kim
kkim@masseygail.com
MASSEY & GAIL LLP
1000 Main Avenue SW, Suite 450
Washington, D.C. 20024
Tel: (202) 652-4511

Daniel H. Handman
dhandman@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
1299 Ocean Avenue, Suite 750
Santa Monica, CA  90401
Tel: (310) 255-0705

***Attorneys for Defendant National Association of REALTORS®***

*Motion Hearing: August 28, 2026, 9:30 A.M.*
*Fact Discovery Cut-Off: October 23, 2026*
*Pretrial Conference: September 10, 2027*
*Trial date: September 27, 2027*

Brandon K. Braga (SBN 253233)
brandon.braga@theagencyre.com
Kristin A. Regan (SBN 156680)
kregan@theagencyre.com
UMRO Realty Corp.
331 Foothill Road, Suite 100
Beverly Hills, California 90210

***Attorneys for Third Party UMRO Realty Corp.***

# IN THE UNITED STATES DISTRICT COURT
## FOR CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

| | |
|---|---|
| The PLS.com, LLC, a California limited  liability company,<br><br>     Plaintiff,<br>vs.<br><br>The National Association of Realtors,<br><br>    Defendant. | Case No.: 2:25-cv-05971-JWH-E<br><br>**JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS**<br><br>**HEARING DATE: AUGUST 28, 2026, 9:30 A.M.** |

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO
COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

## TABLE OF CONTENTS

INTRODUCTORY STATEMENTS ..................................................................................3

I.       NAR's Introductory Statement ..........................................................................3

II.      UMRO's Introductory Statement......................................................................6

ISSUE IN DISPUTE ..................................................................................................7

I.       NAR's Request No. 7 and UMRO's Responses and Objections.........8

II.      NAR's and UMRO's Positions Concerning Request No. 7 .................9

         A.      NAR's Position ................................................................................9

         B.      UMRO's Position ........................................................................14

CONCLUSION ...........................................................................................24

Pursuant to Local Rule 37 of the Local Civil Rules for the Central District of California, Defendant National Association of REALTORS® ("NAR") and third party UMRO Realty Corp. d/b/a/ The Agency ("UMRO") submit this Joint Stipulation in connection with the document subpoena that NAR issued to UMRO on November 12, 2025 ("Subpoena"). On December 23, 2025, UMRO objected to nearly all of NAR's document requests ("Requests"). Following extensive written correspondence and multiple meetings, the parties have resolved their disagreements save for one Request. NAR now moves to compel as to that issue.

NAR and UMRO request a motion-hearing date of Friday, August 28, 2026, at 9:30 A.M., before the Honorable Charles F. Eick. The fact discovery cut-off date is October 23, 2026; the final pretrial conference date is September 10, 2027; and the trial date is September 27, 2027. Scheduling Order, Dkt. 51, at 1–2.

The parties have each submitted declarations in support of their positions. Attached as exhibits to the French Declaration, filed on behalf of NAR, are: the scheduling order, Dkt. 51 (Exhibit 1); NAR's Subpoena to UMRO (Exhibit 2 ("Subpoena")); UMRO's response to NAR's Subpoena (Exhibit 3 ("R&Os")); the April 9, 2026, meet-and-confer letter NAR sent UMRO (Exhibit 4 ("April 9 Letter")); the first version of the draft joint stipulation, which NAR sent to UMRO on July 2, 2026 (Exhibit 5 ("First Joint Stipulation")); the July 9, 2026, letter that UMRO sent NAR concerning the subpoena and the parties' subsequent

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

communications (Exhibit 6 ("July 9 Letter")); the July 17, 2026, letter that UMRO sent to NAR following a second meet-and-confer (Exhibit 7 ("July 17 Letter")); the first amended complaint from *Western World Insurance Co. v. UMRO Realty Corp.*, No. 18-cv-05594 (C.D. Ca. Sept. 17, 2018), Dkt. 33, one of the cases relevant to NAR's Request No. 7 (Exhibit 8 ("Western World Complaint")); email correspondence between the parties concerning the Subpoena (Exhibit 9 ("Email Thread One") and Exhibit 10 ("Email Thread Two")); and a copy of a page from UMRO's website announcing the launch of Plaintiff, The PLS.com, LLC ("PLS"), The Agency Team, *ThePLS.com Launches First Private, National, Off-Market Listing Platform*, THE AGENCY JOURNAL (Aug. 5, 2017), https://blog.theagencyre.com/2017-08-theplscom-launches-first-private-national-off-market-listing-platform/ (Exhibit 11 ("PLS Article")).

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

# INTRODUCTORY STATEMENTS

## I.    NAR'S INTRODUCTORY STATEMENT

This dispute concerns NAR's Request No. 7, which seeks documents related to underlying litigations in which Mauricio Umansky (a founder of both PLS and UMRO) and UMRO were named as defendants for an allegedly fraudulent real-estate transaction that implicates the NAR policy at issue in the instant litigation. NAR's introductory statement describes the chain of events that have led to the need to seek court intervention.

On April 9, 2026, NAR sent UMRO a letter requesting a meet-and-confer. Email Thread One at 16; April 9 Letter. It was not until May 18 that UMRO offered a date for the meeting. Email Thread One at 11–12. During the call, NAR offered to send UMRO proposed search terms for its Requests, and UMRO agreed to consider the search terms. *Id.* at 7–8. So, on June 3, NAR sent UMRO proposed search terms for certain Requests (reserving its rights as to the other Requests). *Id.* at 6–7. When UMRO did not acknowledge receipt of the terms, NAR attempted to follow up over email and voicemail. *Id.* at 3–5.

Finally, on June 15, a Monday, UMRO said that it would send an update by the end of the week. *Id.* at 2–3. That Friday, UMRO wrote that it would send a written response the following week. *Id.* at 1. The next Friday, NAR asked UMRO whether it would be providing a response. *Id.* UMRO did not respond.

3

On July 2, NAR sent UMRO a draft joint stipulation concerning the issues the parties then disputed—including NAR's Request No. 7. Email Thread Two at 30–31; First Joint Stipulation. On July 7, UMRO requested an extension of its response deadline. Email Thread Two at 28–29. NAR agreed to an extension on the condition that the parties meet again to try to resolve the dispute. *Id.* at 27–28. UMRO instead sent a letter on July 9, substantively responding for the first time to the search terms and largely maintaining its objections. *Id.* at 25; July 9 Letter.

The next day, a Friday, NAR proposed a call to discuss UMRO's letter. Email Thread Two at 24. UMRO responded just before 6:00 P.M. Central Time, saying that it could either meet "now" or one full week later. *Id.* at 23–24. After NAR arranged a call for 6:30 P.M. Central Time that evening, UMRO said it was unavailable. *Id.* at 21–23. The parties then scheduled a call for July 16. *Id.* at 20.

UMRO's demeanor in the second meet-and-confer was unprofessional from the start. *Id.* at 17–18; French Decl. ¶¶ 12–18. Before the meet-and-confer, and in response to privilege concerns raised in UMRO's July 9 letter, NAR had proposed excluding from Request No. 7 communications with UMRO's and Umansky's counsel in the underlying litigations. Email Thread Two at 18–19. But UMRO refused to engage in substantive discussions on this proposal during the meeting. French Decl. ¶¶ 15–16. UMRO repeated that the letter spoke for itself and abruptly ended the call before the scheduled time had expired. *Id.* ¶¶ 16–18.

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

On July 17 (Pacific Time), UMRO sent NAR another letter. Email Thread Two at 14; July 17 Letter. As to Request No. 7, UMRO acknowledged that NAR's proposal "meaningfully narrowed" the scope of documents at issue. July 17 Letter at 4. But a couple days later, UMRO said that it would not produce documents for Request No. 7. Email Thread Two at 10–12. UMRO argued that PLS had already produced such documents and that the Request required review of the protective orders in the underlying litigations. *Id.* at 11–12. NAR informed UMRO that the search terms had not been used earlier in this case. *Id.* at 8. It also questioned how another case's protective order inhibited UMRO's use of its own documents. *Id.*

By July 28, the parties had ostensibly resolved the other disputed Requests. NAR then relayed to UMRO that it had confirmed with PLS's counsel that the search terms for Request No. 7 were not used to search the files of PLS or of PLS's founders at any point in the litigation. *Id.* at 2–3. In response, UMRO argued that NAR should have requested the documents from Umansky. *Id.* at 1.

Throughout this process, NAR has maintained its willingness to negotiate with UMRO in good faith to reduce the purported burden of its Requests, including Request No. 7. *E.g., id.* at 2, 8; Email Thread One at 3. UMRO, for its part, has continuously kicked the can and shifted the basis for its objections. Having exhausted efforts to resolve this dispute through good-faith negotiations, NAR now moves to compel UMRO to produce documents for Request No. 7.

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

## II.   UMRO'S INTRODUCTORY STATEMENT

This litigation involves a single antitrust claim brought by The Private Listing Service ("PLS") against the National Association of Realtors ("NAR"). PLS alleges that NAR unlawfully restrained their trade to their detriment. NAR denies these claims. (Compl. ¶¶ 1-12, ECF No. 1.)

UMRO is not a party to this action. NAR served UMRO with a subpoena on November 11, 2025, and UMRO served objections to most requests on December 23, 2025, on grounds that they were overbroad and burdensome. NAR waited four months to respond to UMRO's objections on April 9, 2025, and to request a meet and confer. After nearly four months of extensive meet-and-confer efforts, in which UMRO tirelessly explained the burdensome, disproportionate and improper nature of the requests, the parties resolved all but one request. Under the agreement, UMRO would search ten email accounts for specified terms over date ranges spanning four to nine years. UMRO has already produced documents from two accounts. The parties were unable to resolve Request No. 7, which seeks documents concerning unrelated litigation involving a PLS principal. (Regan Decl. ¶ 2.)

Counsel for PLS has confirmed that NAR has not requested these documents from the PLS principal or otherwise pursued them through party discovery. Nor has NAR offered evidence that UMRO possesses unique

documents unavailable from the parties. To the contrary, PLS has produced approximately 286,458 documents, including 238 documents relating to the litigation files that NAR now seeks from UMRO. NAR will also have an opportunity to examine the PLS principal directly at his deposition, which NAR noticed for September 11, 2026. (Regan Decl. ¶ 3 & Exs. B-C.)

The burden of compliance is substantial and disproportionate to any likely benefit. To respond to Request No. 7, UMRO—a non-party with a small in-house technology team and two in-house attorneys—would have to collect and download almost nine years of documents; search, review, and segregate privileged and otherwise protected materials; and incur weeks of personnel time and expense. NAR acknowledges that it does not seek these materials to prove the merits of its claim; rather, it seeks them solely for potential impeachment. (Regan Decl. ¶¶ 4-5.)

## ISSUE IN DISPUTE

This dispute concerns just one Request, NAR's Request No. 7, which involves underlying lawsuits alleging fraudulent conduct on the part of UMRO and Umansky with respect to a real-estate transaction.

7

## I.    NAR'S REQUEST NO. 7 AND UMRO'S RESPONSES AND OBJECTIONS

REQUEST FOR PRODUCTION NO. 7 (Subpoena at 6)[1]

All Documents and communications relating to the Umansky Fraud Litigations.

UMRO's RESPONSES AND OBJECTIONS TO REQUEST NO. 7 (R&Os at 11)

UMRO incorporates by reference its General Objections as though fully set forth herein.

UMRO objects to this Request on the grounds that it is argumentative on its face by alleging "Fraud". For these reasons it appears to be interposed for an "improper purpose, such as to harass" UMRO. Rule 26(g)(1)(B). This Request is also improper because any discovery concerning the topic requested should be directed to the parties of that litigation, and not to UMRO. Thus, the Request places a clear undue burden on UMRO. Rule 45(d)(1) and 45(d)(3)(iv).

---

[1] Relevant to this Request, Paragraph 14 of NAR's Subpoena definitions provides: "'Umansky Fraud Litigations' refer to the following cases, individually and collectively: Western World Insurance Co. v. UMRO Realty Corp., (C.D. Ca. filed June 25, 2018); Sweetwater Malibu CA, LLC v. Umansky, 2:19-cv-1848, (C.D. Ca. filed Mar. 13, 2019); Hakim v. Umansky, 19SMCV01619 (Cal. Super. Ct. filed Sept. 13, 2019); Segal vs. Umansky, 19SMCV01720 (Cal.Super. Ct. filed Sept. 27, 2019); Sweetwater Malibu CA, LLC v. Hakim, 2:20- cv-08945-GW-KS, (C.D. Ca. filed Sept. 29, 2020)." Subpoena at 3.

This Request is not limited to the subject matter of the case and therefore does not "appear reasonably calculated to lead to the discovery of admissible evidence" Rule 26(b). It also requests documents that are privileged or protected and may be work product, Rule 45(d)(3)(A)(iii).

In addition, this Request contains built-in legal conclusions and seeks categories of documents UMRO does not maintain in any centralized form. UMRO does not maintain centralized logs, reports, or files of the type demanded and therefore has no responsive documents in the manner requested.

Therefore, UMRO will not produce any documents responsive to this Request.

## II.   NAR'S AND UMRO'S POSITIONS CONCERNING REQUEST NO. 7

### A.   NAR's Position

During the meet-and-confer on May 27, 2026, NAR proposed that it send search terms for this Request to UMRO so that UMRO could determine whether it would produce documents or stand on its objections. Email Thread One at 7–8. UMRO agreed to consider the proposed search terms. *Id.* NAR then sent the following search terms (with a date range of January 1, 2017, to the present) corresponding to Request No. 7: (1) 3620 OR Sweetwater, (2) Nguema OR Oberfeld OR Hakim, (3) "Western World." *Id.* at 6–7.

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

These search terms relate to the litigations alleging fraud against UMRO and Umansky. NAR's understanding—unrefuted by UMRO—is that Umansky, in his role as a real estate agent with UMRO, was accused of committing fraud in a real estate transaction that bears on the issues in this case. The following draws from the amended complaint in *Western World Insurance Co. v. UMRO Realty Corp.*, No. 18-cv-05594 (C.D. Ca. Sept. 17, 2018), Dkt. 33, with NAR's proposed search terms bolded: The property at issue in the underlying litigations was located at **3620 Sweetwater** Mesa, Malibu, California (Western World Complaint ¶ 29); Teodoro **Nguema** was the principal and managing member of the LLC that owned the property (UMRO and Umansky's client) (*id.* ¶¶ 29–30, 36); Mauricio **Oberfeld** offered Umansky an opportunity to invest in the property, which Umansky accepted without timely disclosure to his client, and ultimately bought the property (*id.* ¶¶ 62–65); Oberfeld then resold the property less than one year later, along with the other investors (including Umansky), for a profit of over $30 million, with Umansky serving as the listing agent (*id.* ¶¶ 66–67); Sam **Hakim** had offered first to buy the property, then to buy for $8 million an assignment of Oberfeld's right to purchase the property, which UMRO and Umansky did not disclose to the seller (*id.* ¶¶ 43–45); and **Western World** Insurance Company issued a liability-insurance policy to UMRO that was implicated in the underlying

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO
COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

lawsuits, leading to Western World's own lawsuit against UMRO and Umansky (*id.* ¶¶ 17, 75–76).

These documents are highly relevant. Indeed, the alleged wrongful conduct—Umansky and UMRO withholding information from their client about the true value of the property in their own self-interest—implicates the NAR rule at issue in the instant litigation. NAR's Clear Cooperation Policy ensures that information about homes for sale in a particular area is broadly publicized through the local Multiple Listing Service, thereby upholding NAR's commitment to provide equal opportunity to all and transparency in the housing market. At a minimum, the requested documents speak directly to the credibility and potential motives of key witnesses in this case and are therefore discoverable. *See, e.g.*, *Davis v. Kelly Servs., Inc.*, No. CV 17-1699-GW (PLAX), 2017 WL 11633478, at *7 (C.D. Cal. Oct. 23, 2017) (denying a motion to quash a third-party subpoena in part because "documents that tend to implicate credibility, such as disciplinary records and performance evaluations, are discoverable" (citation omitted)).

Further, UMRO itself is closely connected to the instant case. Mauricio Umansky, the founder and CEO of UMRO and one of four co-founders of PLS, holds or held a partial ownership interest in both UMRO and PLS. Other individuals involved with PLS also work with or at UMRO or did so in the past. Chris Dyson, another PLS co-founder, still maintains a role with UMRO. And

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

James Harris and David Parnes are both PLS co-founders as well as former UMRO employees. On top of that, UMRO worked with PLS's co-founders to help launch PLS. For example, after PLS launched, UMRO posted an article promoting PLS, with quotes from Dyson and a link to join PLS. PLS Article at 1–3.[2] Simply put, UMRO is far from a typical "third party" in this case.

UMRO has nonetheless argued that NAR must request the documents from Umansky (who himself is a non-party), not UMRO. In doing so, UMRO omits that it too is named as a defendant in the underlying litigation. *See supra* n.1. Even more, there is no reason to think that Umansky was the sole UMRO employee working on such a major transaction. Requesting the documents from UMRO is therefore the only way to obtain the complete universe of responsive materials; UMRO, unlike Umansky, could include in its production custodians other than Umansky who were involved in the underlying events.

To the extent UMRO continues to object on the basis of privilege or the effect of a protective order from another case, those points are likewise meritless. In advance of the July 16 meet-and-confer, NAR offered to exclude from the

---

[2] NAR has refrained from relying upon documents from other parties' productions that are marked Confidential or Highly Confidential because NAR maintains that even publicly available information amply demonstrates UMRO's close connections to this case. To the extent the Court believes that more information is required, NAR will work with the interested parties to submit materials under seal as appropriate.

12

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

scope of its Request communications with Umansky's and UMRO's counsel in the underlying litigations as a response to UMRO's purported concerns about reviewing potentially privileged "litigation files." Email Thread Two at 18–19. UMRO appeared to agree that this was a meaningful concession. July 17 Letter at 4. As for the protective order, UMRO has never explained why such an order entered in another case would limit UMRO's ability to produce its own documents (not those of another party) in the instant case. *See, e.g.*, *Anderson v. Domino's Pizza, Inc.*, No. 11-CV-902 RBL, 2012 WL 1076261, at *3 (W.D. Wash. Mar. 30, 2012) (explaining that, although a protective order might govern a party's use of *another* party's materials in a later case, it "obviously does not" allow a party to refuse to produce its "own materials" because "otherwise, a party could immunize its own documents from discovery in later litigation").

It bears emphasis that NAR has repeatedly offered to negotiate in good faith the search terms and custodians for Request No. 7. *E.g.*, Email Thread Two at 2, 8; Email Thread One at 3. UMRO has refused to engage whatsoever on this point. It cannot legitimately complain that the Request is overbroad, Email Thread Two at 1, while refusing to even discuss NAR's offer to try to reach a compromise.

For these reasons, NAR requests that this Court grant its motion to compel UMRO's production of documents responsive to Request No. 7 using the search terms NAR has proposed. In the alternative, although NAR maintains that its

13

proposed search terms are reasonable, it remains willing to work with UMRO to reach a mutually agreeable solution.

### B.    UMRO's Position

### 1. UMRO is Not a Party to this Action

UMRO Realty Corp., dba The Agency ("UMRO") is a residential real estate brokerage. Four of the principals of PLS are or were affiliated with UMRO as real estate agents, and one principal, Mauricio Umansky ("Umansky"), holds a partial ownership interest in both entities. UMRO and PLS, however, are separate legal entities that operate independently. Neither entity exercises managerial control, oversight, governance, or operational authority over the other, nor does either direct, supervise, or participate in the other's business operations. (Regan Decl. ¶ 6.)

UMRO's connection to the discovery at issue is that its systems host or previously hosted email accounts used by the four PLS principals. This Subpoena therefore attempts to use UMRO as a discovery proxy for PLS and its principals. But common ownership does not erase separate corporate identities or transform UMRO into a repository for PLS discovery. (Regan Decl. ¶ 7.)

It is understood that on one occasion PLS paid UMRO's Marketing Department to prepare a news report for The Agency's website announcing the launch of ThePLS.com. A single news entry on a large website does not provide

14

a basis to treat UMRO and PLS as the same entity. ((Regan Decl. ¶ 8; see Ex.11 to NAR's French Decl.)

**2. NAR Did Not First Seek the Requested Materials Through Party Discovery**

Request No. 7 seeks, "All Documents and communications relating to the Umansky Fraud Litigations." (Ex. A to the Regan Decl. at 6.) Through meet and confer efforts, NAR requested specific search terms to satisfy Request No. 7: "3620 Sweetwater", "Nguema", "Oberfeld", "Hakim" and "Western World". (Regan Decl. ¶ 2.) Unlike the other requests as to which the parties reached agreement, the documents responsive to Request No. 7 are within the possession, custody or control of PLS principal Umansky. (Regan Decl. ¶ 9.)

It is established law that a subpoena should not be used to compel a nonparty to produce documents that are available from a party to the action. In *Facetec, Inc v. iProov Ltd.,* (In re Subpoena to Jumio Corp.), No. 23-MC-80263-VKD, slip op. at 4 (N.D. Cal. Jan. 30, 2024), the court ruled in favor of the nonparty where the requested documents were in the party's possession and the requesting party had never sought them from that party. The court explained that "it is improper for [a requestor] to seek documents from a non-party . . . when those documents appear to be available from the [party]." *Id*.

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

The case of *Athalonz, LLC v. Under Armour, Inc.*, No. 23-mc-80324-LJC (N.D. Cal. Feb. 14, 2024), likewise confirms that the requesting party must first seek discovery from its opponent when the opponent may reasonably be expected to possess the same information. Only then may the requesting party attempt to show that a nonparty has unique, relevant, and nonduplicative evidence. "The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts," *Id.* (citing *Maplebear Inc. v. Uber Techs., Inc.,* No. 21-mc-80007-SK, 2021 WL 1845535, at 1 (N.D. Cal. Mar. 23, 2021) (citation omitted)).

NAR does not dispute that the documents sought by Request No. 7 are within Umansky's possession, custody and control of Umansky. Indeed, PLS has already produced a broad technology-assisted collection of documents from the email accounts of four principals—Umansky, Chris Dyson, James Harris, and David Parnes (the "Principals")—covering an almost nine-year period. Those searches resulted in the production to NAR of nearly 286,458 documents. Of those documents, approximately 238 are responsive to the precise search terms NAR now requests from UMRO under Request No. 7. (Regan Decl. ¶ 3 & Exs. B-C.) Below is a breakdown of the total number of documents responsive to each of the search terms NAR is currently requesting. These documents were produced by PLS and Umansky within the last year, and are in NAR's possession today:

16

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

- "3620 Sweetwater" – 21 documents

- "Nguema" – zero documents

- "Oberfeld" – 123 documents

- "Hakim" – 94 documents

- "Western World" – zero documents

That production confirms that the party—not the nonparty UMRO—is the appropriate and less burdensome source for this discovery. If NAR believed PLS's or Umansky's productions were incomplete or that they had not run the requested searches, it should have identified the purported deficiency and pursued a targeted follow-up request, met and conferred, or, if necessary, sought relief directed to PLS.  Having failed to pursue discovery from the party that controls these materials, NAR now seeks to shift that burden to a nonparty through a Rule 45 subpoena. The Federal Rules do not permit such an end-run around the ordinary discovery process.

Counsel for PLS has confirmed that NAR never requested any documents relating to the Umansky Fraud Litigation from PLS or Umansky. (Regan Decl. ¶ 3; Exs. C, D at 4-5 & E at 5 to the Regan Decl.) Nor has NAR has explained why a focused supplemental request to Umansky would be inadequate. Finally, NAR has not shown that UMRO possesses unique, material, and nonduplicative

evidence; that the same information cannot be obtained from Umansky; or that party-held material is unreliable. Without those showings, the Subpoena is cumulative, disproportionate, and an improper attempt to use a nonparty to police or supplement party discovery. (Regan Decl. ¶ 10.)

NAR will suffer no prejudice if the motion is denied. NAR has scheduled Umansky's deposition for September 11, 2026, and will have an opportunity to examine him concerning these issues at that time. (Regan Decl. ¶ 3 & Ex. C.)

Nor has NAR explained what it expects to obtain from UMRO that it has not already received from Umansky. PLS has produced 286 documents responsive to the specific search terms at issue, which should be sufficient for any asserted impeachment purpose. The claimed impeachment value is particularly unclear because, to UMRO's knowledge, NAR seeks this evidence only as to Umansky— not all six principals. (Regan Decl. ¶ 11.)

Courts have recognized that a district court does not abuse its discretion by denying discovery of "impeachment evidence for non-existent testimony, which it had not even attempted to obtain" from the party." *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 977–79 (Fed. Cir. 1993). The proposed discovery has, at most, an attenuated connection to a potential credibility dispute involving a trial witness; it does not assist in resolving the sole claim actually pleaded. Where the

18

likely value is limited to impeachment on a collateral subject, the burden and expense imposed on a nonparty outweigh the request's marginal value.

This action presents a single cause of action for restraint of trade under the Sherman Act. The merits inquiry concerns whether NAR restrained trade. NAR acknowledges that it seeks the "Umansky Litigation Files" through Request No. 7 solely to develop character or credibility evidence against Umansky.

The Umansky Fraud Litigation involves three cases arising from the same underlying real estate transaction. The plaintiffs alleged that Umansky defrauded them by failing to disclose that he was part of the purchasing group and by steering the seller toward that group's offer. Umansky acted as the seller's real estate agent and was part of the group that ultimately purchased the property. All three cases have been resolved. (Regan Decl. ¶ 12.)

NAR's assertion that the Umansky Fraud Litigation files are relevant because they purportedly relate to the Clear Cooperation Policy ("CCP") is a red herring. NAR alleges that it adopted the CCP to prohibit the public marketing of properties outside the MLS and to prevent the circumvention of MLS listing requirements. The Umansky Fraud Litigation did not involve the CCP, its interpretation, or its application. Rather, NAR seeks these litigation files for an improper purpose—to inject collateral allegations concerning Umansky into this

case and to attack his character, rather than to obtain information relevant to any claim or defense. (Regan Decl. ¶ 13.)

**3.      Request No. 7 Imposes a Substantial and Disproportionate Burden on UMRO**

Requiring UMRO to undertake a massive search and review of hundreds or thousands of accounts spanning approximately nine years, at substantial expense, in the hope of locating relevant, non-privileged and non-protected documents that have not already been produced, is disproportionate to the minimal likelihood that the search will yield new information.

The Ninth Circuit directs courts to protect nonparties from discovery demands that are unreasonable and oppressive. Rule 45 (b). In *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975), the Ninth Circuit affirmed quashing broad third-party subpoenas in an antitrust action where compliance required extensive review and analysis and the requesting party's asserted need did not outweigh the burden and invasion of privacy imposed on nonparties.

That balance favors UMRO. As explained to NAR during the meet and confer process, compliance would require extensive resources to identify potentially responsive custodians and accounts; locate and restore archived information,

20

including data maintained off-site; access or restore data from older platforms and software systems that are no longer in regular use; review potentially massive quantities of documents for responsiveness; conduct attorney review for privilege, confidentiality, and other protections; prepare privilege logs where required; and prepare responsive documents for production. (Regan Decl. ¶ 14.)

This process would impose a tremendous burden on UMRO's technology department, which consists of only a handful of personnel. For example, searching email accounts requires downloading each mailbox, opening or converting the MBOX file into a usable format, conducting searches, collecting the results, and completing legal review before production. Given the size and format of the mailboxes and the limited resources of UMRO's in-house technology department, the searches must proceed sequentially rather than simultaneously. (Regan Decl. ¶ 15.)

Rule 45(d)(1) requires NAR, as the party responsible for issuing and serving the subpoena, to take reasonable steps to avoid imposing undue burden or expense. Yet NAR's asserted benefit is merely the possibility of locating character evidence for impeachment. The requested discovery therefore imposes a concrete and immediate burden on a nonparty in pursuit of a speculative and collateral objective. Rules 26 and 45 do not permit that result.

21

Even if NAR were to limit the searches to just a few email accounts, the litigation documents collected would involve substantial amounts of attorney-client communications, attorney work product, attorney mental impressions and litigation strategy, confidential discovery, and documents subject to protective orders. It would require UMRO to collect and review large volumes of litigation-related documents solely to identify, segregate, redact, and log privileged and protected materials. Much of this work would have already been performed in connection with party discovery in this action. Because UMRO was a defendant in all these actions, any privilege log prepared by UMRO would almost certainly be duplicative of the privileges asserted by PLS and the/or the overlapping custodians. Requiring a nonparty to undertake this extensive review would impose substantial burden and expense while providing little, if any, additional benefit to NAR. (Regan Decl. ¶ 16.)

Simply put, the request is an improper end-run around party discovery. Courts routinely quash such subpoenas when the documents are available from a party on the grounds that the subpoena puts an undue burden on the nonparty. See *Genus Lifesciences Inc. v. Lannett Co.,* No. 18-cv-07603-WHO (N.D. Cal. Dec. 30, 2019). Rule 26 likewise requires the Court to limit discovery that is "unreasonably cumulative or duplicative or can be obtained from some other

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

source that is more convenient, less burdensome, or less expensive." Rule 26(b)(2)(C)(i).

To the extent Request No. 7 seeks pleadings, motions, orders, or other publicly filed documents, those materials are equally available to NAR through public court dockets and should not be the subject of compelled production by UMRO.

## 4.    Conclusion

NAR has not carried its burden to justify compelling this nonparty to produce documents. NAR has not demonstrated that the information cannot be obtained through party discovery or another less burdensome source; that UMRO uniquely possess the information; or that the request's probable evidentiary value outweighs the substantial burden of collection and review imposed on a non-party.

The Court should deny NAR's motion to compel in full. In the alternative, if the Court orders UMRO to comply with all or any portion of Request No. 7, UMRO respectfully requests that the Court condition compliance on NAR's reimbursement of UMRO's reasonable costs of compliance. Those costs include the reasonable expenses of retaining and training the additional technology and legal personnel necessary to collect, process, search, review, redact, privilege-log, and produce responsive materials.

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

In the alternative, if the Court orders UMRO to comply with any portion of Request No. 7, UMRO respectfully requests that the Court require NAR to reimburse UMRO for the reasonable costs of compliance, including hiring temporary technology and legal personnel and training them to collect, process, review, redact, privilege-log, and produce responsive materials.

## CONCLUSION

NAR and UMRO request a hearing date of Friday, August 28, 2026, at 9:30 A.M., before the Honorable Charles F. Eick to resolve NAR's motion to compel.

24

Dated: August 7, 2026

| **National Association of REALTORS®** | **UMRO Realty Corp. d/b/a The Agency** |
|---|---|
| By: */s/ Constance Grieves* | By: _Kristin A. Regan (signature)_ |
| Leonard A. Gail | Brandon K. Braga |
| lgail@masseygail.com | brandon.braga@theagencyre.com |
| Suyash Agrawal | Kristin A. Regan |
| sagrawal@masseygail.com | kregan@theagencyre.com |
| Peter M. Stasiewicz | UMRO Realty Corp. d/b/a The Agency |
| pstasiewicz@masseygail.com | |
| Constance Grieves (*PHV pending*) | 331 Foothill Road, Suite 100 |
| cgrieves@masseygail.com | Beverly Hills, California 90210 |
| William K. French | |
| wfrench@masseygail.com | ***Attorneys for Third Party UMRO Realty Corp. d/b/a The Agency*** |
| **MASSEY & GAIL LLP** | |
| 50 East Washington Street, Suite 400 | |
| Chicago, IL  60602 | |
| Tel: (312) 283-1590 | |

Matthew M. Collette
mcollette@masseygail.com
Kylie C. Kim
kkim@masseygail.com
**MASSEY & GAIL LLP**
The Wharf
1000 Main Avenue SW, Suite 450
Washington, D.C. 20024
Tel: (202) 652-4511

Daniel H. Handman
dhandman@hkemploymentlaw.com
**HIRSCHFELD KRAEMER LLP**
1299 Ocean Avenue, Suite 750
Santa Monica, CA  90401
Telephone: (310) 255-0705

25

JOINT STIPULATION FOR DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS'S MOTION TO COMPEL THIRD PARTY UMRO REALTY CORP. D/B/A THE AGENCY TO PRODUCE DOCUMENTS

*Attorneys for Defendant National Association of REALTORS®*

26

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2026, I caused a true and correct copy of the foregoing to be served by electronic mail on the following counsel of record for PLS and counsel for UMRO.

Christopher G. Renner
cgrenner@dhillonlaw.com
Jonathan M. Shaw
jshaw@dhillonlaw.com
Andrew K. Mann
akmann@dhillonlaw.com
Domenic Aulisi
daulisi@dhillonlaw.com
Dhillon Law Group Inc.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314

Brandon Q. Tran
btran@dhillonlaw.com
4675 MacArthur Court, Suite 1410
Newport Beach, CA 92660

*Attorneys for Plaintiff The PLS.com, LLC*

Brandon K. Braga
brandon.braga@theagencyre.com
Kristin A. Regan
kregan@theagencyre.com
UMRO Realty Corp. d/b/a The Agency
331 Foothill Road, Suite 100
Beverly Hills, California 90210

*Attorneys for Third Party UMRO Realty Corp. d/b/a The Agency*

Dated: August 7, 2026

/s/ Constance Grieves
Constance Grieves