Brandon K. Braga (State Bar No. 253233)
Kristin A. Regan (State Bar No. 156680)
THE AGENCY
331 Foothill Road, Suite 100
Beverly Hills, California 90210
Telephone: (213) 624-6900
Facsimile:  (213) 624-6999
brandon.braga@theagencyre.com
kregan@theagencyre.com

**Attorneys for Non-Party UMRO REALTY CORP.**

# IN THE UNITED STATES DISTRICT COURT
## FOR CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| The PLS.com, LLC, a California limited liability company,<br><br>        Plaintiff,<br>vs.<br><br>The National Association of Realtors,<br><br>        Defendant. | Case No.: 2:25-cv-05971-JWH-E<br><br>**DECLARATION OF KRISTIN A. REGAN IN SUPPORT OF NON-PARTY UMRO REALTY CORP.'S OPPOSITION TO MOTION TO COMPEL**<br><br>**HEARING Date: AUGUST 28, 2026, 9:30 A.M.**:<br><br>*Motion Hearing: August 28, 2026, 9:30 A.M.*<br>*Fact Discovery Cut-Off: October 23, 2026*<br>*Pretrial Conference: September 10, 2027*<br>*Trial date: September 27, 2027* |

1

**DECLARATION OF KRISTIN A. REGAN IN SUPPORT OF NON-PARTY UMRO REALTY CORP.'S OPPOSITION TO MOTION TO COMPEL**

## <u>DECLARATION OF KRISTIN A. REGAN</u>

I, Kristin A. Regan, declare:

1. I am an attorney licensed to practice before this Court and the Associate General Counsel with UMRO Realty Corp., dba The Agency, counsel of record for UMRO Realty Corp., a nonparty to this action. I have personal knowledge of the matters stated in this declaration and, if called as a witness, could and would testify competently to them. I submit this declaration in support of Non-Party UMRO Realty Corp.'s Oppostion to Motion to Compel.

2. NAR served UMRO with a subpoena on November 11, 2025, and UMRO served objections to most requests on December 23, 2025, on grounds that they were overbroad and burdensome. NAR waited four months to respond to UMRO's objections on April 9, 2025, and to request a meet and confer. After nearly four months of extensive meet-and-confer efforts, in which UMRO tirelessly explained the burdensome, disproportionate and improper nature of the requests, the parties resolved all but one request. Under the agreement, UMRO would search ten email accounts for specified terms over date ranges spanning four to nine years. UMRO has already produced documents from two of the main accounts. The parties were unable to resolve Request No. 7, which seeks documents concerning unrelated litigation involving a PLS principal. Through meet and confer efforts, NAR requested specific search

2

terms to satisfy Request No. 7: "3620 Sweetwater", "Nguema", "Oberfeld", "Hakim" and "Western World". Attached as Exhibit A is a true and correct copy of the Subpoena issued by NAR upon UMRO on November 11, 2025.

3. NAR does not dispute that the documents sought by Request No. 7 are within Umansky's possession, custody and control of Umansky. Counsel for PLS has confirmed that NAR has not requested these materials from the PLS principal or otherwise pursued them through party discovery. Nor has NAR offered evidence that UMRO possesses unique documents unavailable from the parties. Indeed, PLS has already produced a broad technology-assisted collection of documents from the email accounts of four principals— Umansky, Chris Dyson, James Harris, and David Parnes (the "Principals")— covering an almost nine-year period. Those searches resulted in the production to NAR of nearly 286,458 documents. Of those documents, approximately 238 are responsive to the precise search terms NAR now requests from UMRO under Request No. 7. Below is a breakdown of the total number of documents responsive to each of the search terms NAR is currently requesting. These documents were produced by PLS and Umanksy within the last year, and are in NAR's possession today:

- o "3620 Sweetwater" – 21 documents
- o "Nguema" – zero documents
- o "Oberfeld" – 123 documents

3

**DECLARATION OF KRISTIN A. REGAN IN SUPPORT OF NON-PARTY UMRO REALTY CORP.'S OPPOSITION TO MOTION TO COMPEL**

- o "Hakim" – 94 documents

- o "Western World" – zero documents

NAR will also have an opportunity to examine the PLS principal directly at his deposition, which NAR noticed for September 11, 2026. Attached as Exhibit B is a true and correct copy of an email from Counsel for PLS, Christopher G. Renner to Kristin A. Regan, dated July 21, 2026. Attached as Exhibit C is a true and correct copy of an email from Counsel for PLS, Christopher G. Renner to Kristin A. Regan, dated August 4, 2026.

4. The burden of compliance is substantial and disproportionate to any likely benefit. To respond to Request No. 7, UMRO—a non-party with a small in-house technology team and two in-house attorneys—would have to collect and download almost nine years of documents; search, review, and segregate privileged and otherwise protected materials; and incur weeks of personnel time and expense.

5. NAR acknowledges that it does not seek these materials to prove the merits of its claim; rather, it seeks them solely for potential impeachment.

6. UMRO Realty Corp., dba The Agency ("UMRO") is a residential real estate brokerage. Four of the principals of PLS are or were affiliated with UMRO as real estate agents, and one principal, Mauricio Umansky ("Umansky"), holds a partial ownership interest in both entities. UMRO and PLS, however, are separate legal entities that operate independently. Neither entity exercises

4

**DECLARATION OF KRISTIN A. REGAN IN SUPPORT OF NON-PARTY UMRO REALTY CORP.'S OPPOSITION TO MOTION TO COMPEL**

managerial control, oversight, governance, or operational authority over the other, nor does either direct, supervise, or participate in the other's business operations.

7. UMRO's connection to the discovery at issue is that its systems host or previously hosted email accounts used by the four PLS principals. This Subpoena therefore attempts to use UMRO as a discovery proxy for PLS and its principals. But common ownership does not erase separate corporate identities or transform UMRO into a repository for PLS discovery.

8. It is understood that on one occasion PLS, paid UMRO's Marketing Department to prepare a news report for The Agency's website announcing the launch of ThePLS.com. A single news entry on a large website does not provide a basis to treat UMRO and PLS as the same entity.

9. Unlike the other requests as to which the parties reached agreement, the documents responsive to Request No. 7 are within the possession, custody or control of PLS principal Umansky.

10. NAR has not explained why a focused supplemental request to Umansky would be inadequate. Finally, NAR has not shown that UMRO possesses unique, material, and nonduplicative evidence; that the same information cannot be obtained from Umansky; or that party-held material is unreliable. Without those showings, the Subpoena is cumulative, disproportionate, and

5

**DECLARATION OF KRISTIN A. REGAN IN SUPPORT OF NON-PARTY UMRO REALTY CORP.'S OPPOSITION TO MOTION TO COMPEL**

an improper attempt to use a nonparty to police or supplement party discovery.

11. Nor has NAR explained what it expects to obtain from UMRO that it has not already received from Umansky. PLS has produced 286 documents responsive to the specific search terms at issue, which should be sufficient for any asserted impeachment purpose. The claimed impeachment value is particularly unclear because, to UMRO's knowledge, NAR seeks this evidence only as to Umansky—not all six principals.

12. The Umansky Fraud Litigation involves three cases arising from the same underlying real estate transaction. The plaintiffs alleged that Umansky defrauded them by failing to disclose that he was part of the purchasing group and by steering the seller toward that group's offer. Umansky acted as the seller's real estate agent and was part of the group that ultimately purchased the property. All three cases have been resolved.

13. NAR's assertion that the Umansky Fraud Litigation files are relevant because they purportedly relate to the Clear Cooperation Policy ("CCP") is a red herring. NAR alleges that it adopted the CCP to prohibit the public marketing of properties outside the MLS and to prevent the circumvention of MLS listing requirements. The Umansky Fraud Litigation did not involve the CCP, its interpretation, or its application. Rather, NAR seeks these litigation files for an improper purpose—to inject collateral allegations concerning Umansky

6

**DECLARATION OF KRISTIN A. REGAN IN SUPPORT OF NON-PARTY UMRO REALTY CORP.'S OPPOSITION TO MOTION TO COMPEL**

into this case and to attack his character, rather than to obtain information relevant to any claim or defense.

14. As explained to NAR during the meet and confer process, compliance would require extensive resources to identify potentially responsive custodians and accounts; locate and restore archived information, including data maintained off-site; access or restore data from older platforms and software systems that are no longer in regular use; review potentially massive quantities of documents for responsiveness; conduct attorney review for privilege, confidentiality, and other protections; prepare privilege logs where required; and prepare responsive documents for production.

15. This process would impose a tremendous burden on UMRO's technology department, which consists of only a handful of personnel. For example, searching email accounts requires downloading each mailbox, opening or converting the MBOX file into a usable format, conducting searches, collecting the results, and completing legal review before production. Given the size and format of the mailboxes and the limited resources of UMRO's in-house technology department, the searches must proceed sequentially rather than simultaneously.

16. Even if NAR were to limit the searches to just a few email accounts, the litigation documents collected would involve substantial amounts of attorney-client communications, attorney work product, attorney mental impressions

7

**DECLARATION OF KRISTIN A. REGAN IN SUPPORT OF NON-PARTY UMRO REALTY CORP.'S OPPOSITION TO MOTION TO COMPEL**

and litigation strategy, confidential discovery, and documents subject to protective orders. It would require UMRO to collect and review large volumes of litigation-related documents solely to identify, segregate, redact, and log privileged and protected materials. Much of this work would have already been performed in connection with party discovery in this action. Because UMRO was a defendant in all these actions, any privilege log prepared by UMRO would almost certainly be duplicative of the privileges asserted by PLS and the/or the overlapping custodians. Requiring a nonparty to undertake this extensive review would impose substantial burden and expense while providing little, if any, additional benefit to NAR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 7th day of August, 2026, at Los Angeles, California.


By:_____
                    Kristin A. Regan

**DECLARATION OF KRISTIN A. REGAN IN SUPPORT OF NON-PARTY UMRO REALTY CORP.'S OPPOSITION TO MOTION TO COMPEL**